UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION


MICHAEL MALOTT,

    Plaintiff,

v.                                                                         Case No. 2:12-cv-405
                                                                        HON. GORDON J. QUIST

LINCOLN MARSHALL, et al.,

    Defendants.

_____/


## REPORT AND RECOMMENDATION

Plaintiff Michael Malott, an inmate currently confined at the Oaks Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Inspector Lincoln Marshall, Resident Unit Manager Casey Tallio and Warden Robert Napel. Plaintiff alleges that defendants failed to protect him from an inmate assault while he was housed at Marquette Branch Prison (MBP).

Plaintiff was initially in protective custody at Ionia Correctional Facility, after he provided information about two gang members to Ionia County detectives. Plaintiff agreed to move to general population in a level 4 prison where he was not known as a snitch. In late 2010, plaintiff was transferred to MBP, which is a level 5 prison, and was placed in general population.

Plaintiff was assaulted by another inmate on October 29, 2010. During his October 25, 2010, medical visit, Plaintiff informed prison nurse Shannon Montgomery that he felt threatened. Montgomery informed MBP officials and plaintiff was placed into protective custody while an investigation ensued. Plaintiff informed Resident Unit Supervisor Mark Pokley that he had

received threatening notes from the Melanics prison gang. However, defendants assert that plaintiff would not provide specific facts. Plaintiff asserts that he provided defendants with names of those prisoner who had threatened him, but defendants did nothing. On October 26, 2010, Inspector Marshall received an anonymous note stating that plaintiff was going to be stabbed by the Vice Lords gang because he had testified against a Vice Lords gang member. A handwriting analysis was conducted on the letter, but a match could not be produced. During an interview with plaintiff, defendant Tallio informed plaintiff that Tallio did not believe the letter was credible. Plaintiff explained that he had testified against Vice Lords gang members and that plaintiff was a member of the Latin Counts gang, which is normally a gang that works with Vice Lords members. Plaintiff told defendants that he would be assaulted as pay back for being a snitch. Plaintiff asserts that this meeting occurred with defendants Tallio and Marshall on October 28, 2010. Plaintiff asserts after this interview he was told that the meeting was concluded and plaintiff would be returned to general population. Plaintiff sent two letters to defendant Napel on October 28, 2010, requesting protection and one letter on October 29, 2010, requesting protection. Defendant Tallio alleges that he informed plaintiff that the Security Classification Committee denied his request for protective custody on October 28, 2010, and plaintiff was returned to general population.

On October 29, 2010, plaintiff was assaulted as soon as the cell doors were opened for prisoners to go to the chow hall. Plaintiff alleges that he was attacked by a Latin Counts gang member. Plaintiff alleges that he was beaten on the head and face repeatedly and suffered with a black eye, bruising, lacerations and loose teeth. Plaintiff claims that he now suffers with headaches which he describes as Migraines. He was in pain for weeks and his vision was blurred. Plaintiff claims that he is anxious to the point that he is paranoid and has panic attacks.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant Napel argues that he did not have sufficient personal knowledge of this matter to establish liability. Defendant Napel is the Warden of the prison. Plaintiff has indicated that he sent letters to defendant Napel asking for protective custody prior to the assault. Defendant Napel has provided an affidavit which indicates that plaintiff was interviewed on October 25, 2010

and on November 1, 2010. Defendant Napel indicates that plaintiff was placed in protective custody on November 3, 2010 until his transfer on August 29, 2011 to Ionia Correctional Facility.

Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept.*

*of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

In the opinion of the undersigned, defendant Napel has not supported his argument that he was not personally involved in this matter. A fair reading of defendant Napel's affidavit can only lead to the opposite conclusion. The affidavit, coupled with the allegations made by plaintiff, show that defendant Napel, contrary to his argument, had some involvement in this matter. In the opinion of the undersigned, a question of fact exists on whether defendant Napel had sufficient knowledge to provide plaintiff with protection prior to the assault.

Defendants move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

Under the Eighth Amendment, a prison official has a duty to protect an inmate from violence caused by other prisoners. *Wilson v. Sieter*, 501 U.S. 294, 303 (1991); *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993); *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *Roland v. Johnson*, 856 F.2d 764 (6th Cir. 1988); *McGhee v. Foltz*, 852 F.2d 876, 880-81 (6th Cir. 1988). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). Recognizing that a prison official has an obligation to protect an inmate from assault by another inmate, the Supreme Court defined deliberate indifference as requiring a showing that the prison official consciously disregarded a substantial risk of serious harm to plaintiff. *Id.* at 839. The court stated:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as infliction of punishment.

*Id.* at 837. Thus, in order to support a claim that a prison official failed to protect plaintiff, two conditions must be satisfied: (1) the inmate must show that a substantial risk of harm was present and (2) that the defendants, having knowledge of that risk, possessed a culpable state of mind. *Id.*

In order to support an Eighth Amendment claim, plaintiff must establish "something more than a lack of ordinary due care, inadvertence, or error; the conduct must instead be 'obdurate' or 'wanton'--exhibiting recklessness or callous neglect." *Id.* at 165. *See also Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992); *Walker v. Norris*, 917 F.2d 1449 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 881 (6th Cir. 1988). An error of judgment does not subject a prison official to liability. *Jeffers v. Heavrin*, 10 F.3d 380, 381 (6th Cir. 1993) (errors of judgment are shielded by qualified immunity); *Marsh v. Arn*, 937 F.2d at 1069.

In *Stewart v. Love*, 696 F.2d 43 (6th Cir. 1982), the Sixth Circuit affirmed the dismissal of a prisoner's complaint that prison officials failed to protect him. In that case, prison officials transferred the plaintiff for a period of six months to another prison cell after plaintiff informed the officials that he feared for his safety. Plaintiff was then transferred back to his original cell. Plaintiff informed his counselor that he feared for his safety because he heard rumors regarding a planned attack. Plaintiff was subsequently assaulted. The court found that defendants were not deliberately indifferent to a known risk of harm to plaintiff, and upheld the district court's finding that the assault was a single, isolated incident. The court indicated that a full hearing would be appropriate if no action had been taken to protect the plaintiff. Plaintiff, however, was transferred to another unit after his initial complaints. Following plaintiff's transfer back to the original unit, he then made only general allegations that someone was going to hit him on the head. The court concluded that defendants, at most, were guilty of mere negligence and dismissed the claim.

In this case, plaintiff informed defendants that he was threatened by the Melanics gang and plaintiff alleges that defendants also were aware that a handwritten letter was written threatening an assault against plaintiff. Plaintiff has presented a history of being a gang member and of testifying against other gang members. Plaintiff alleges that he explained this to defendants, but they simply disregarded plaintiff's claims and immediately moved him back to general population. Defendants assert that they could not verify plaintiff's claims, in part because plaintiff failed to provide information that identified his alleged enemies. Plaintiff denies this and asserts that he provided defendants with sufficient identifying information and sufficient information that established that an assault was inevitable. In the opinion of the undersigned, a question of fact exists on the issue of whether defendants acted with deliberate indifference to plaintiff's safety based upon the knowledge known by defendants prior to the decision to release him to general population.

Accordingly, it is recommended that defendants' Motion for Summary Judgment (Docket #49) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2014